UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Joseph D. West

        Debtor.

_____/

Case No. 21-31047-JDA
Chapter 13
Hon. Joel D. Applebaum

Joseph D. West,

        Plaintiff,

v.

State of Michigan, Shiawassee County,
Ryan James Van Gilder, and
Ashley Michele Van Gilder,

        Defendants.

_____/

Adv. P. No. 21-03039-JDA

## OPINION GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on the motion of defendants, the State of Michigan and Shiawassee County, to dismiss an adversary complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"). Defendants seek dismissal of Plaintiff/Debtor's four-count Complaint, which alleges that the state court judgment of foreclosure against Debtor's residence constitutes a fraudulent transfer under 11 U.S.C. § 548 of the Bankruptcy Code. For the reasons set forth in this Opinion, the Motion is GRANTED, and the Complaint is DISMISSED.

## I. FACTS

In 2016, debtor, Joseph West, purchased real property located at 2802 Krouse Road, Owosso, Michigan ("the Owosso property") for $130,000.00, free and clear of any liens.

In 2018, Debtor did not pay the property taxes due and owing on the Owosso property and, in June 2020, the property was forfeited to Shiawassee County.

The State of Michigan, on behalf of Shiawassee County, initiated foreclosure proceedings on the property and, on February 12, 2021, the Shiawassee County Circuit Court entered a judgment of foreclosure. (Dkt. 24, Ex. A).[1]

Debtor did not appeal the judgment of foreclosure and it became final 21 days after its entry, on or around March 5, 2021. Debtor did not redeem the property and, on March 31, 2021, title to the property vested in the State.

On July 26, 2021, Debtor filed an individual chapter 13 bankruptcy petition. Debtor's schedule A states that Debtor is the sole owner of the Owosso property and values the property at $250,000. Schedule C seeks to exempt Debtor's equity in the amount of $25,150 (pursuant to § 522(d)(1), the federal homestead exemption). Schedule D discloses two tax liens on the property, one in the amount of $3,000 and one for $10,000 ("Property Taxes 2018 – 2020"). Both liens are held by the Shiawassee County Treasurer.

Debtor's Chapter 13 plan (Main Case Dkt. 10) proposes to pay the Shiawassee County Treasurer $15,235.80 for unpaid 2018-2020 property taxes as a class 5.2 creditor. The proposed

---

[1]Michigan's General Property Tax Act (GPTA) provides that properties that are subject to an extended period of delinquency are entitled to a circuit court hearing and subject to foreclosure if the taxes are not paid during the third year of delinquency. See, e.g., Mich. Comp. Laws § 211.78k. The last steps, beginning with the filing of a petition in circuit court and through foreclosure and sale, are handled by the Foreclosing Governmental Unit (FGU). *See* Mich. Comp. Laws § 211.78a; 211.8h; 211.78m. The State of Michigan, through its Department of Treasury, was the FGU for Shiawassee County for the 2021 hearing seeking to collect delinquent 2018 taxes. Mich. Comp. Laws § 211.78(3)(a).

2

plan also includes a non-standard provision which states, "[u]pon confirmation, the Shiawassee County Treasurer **shall set aside** the Judgment of Foreclosure entered in Shiawassee County Circuit Court regarding [the Owosso property] and title to the property **shall re-vest** in the Debtor." (Dkt. 10, Section IV.E) (emphasis added).

On August 31, 2021, the Owosso property was sold at a public auction to defendants Ryan and Ashley Van Gilder for $160,000.

On December 10, 2021, Debtor filed the present four-count adversary complaint. Count I asserts that the foreclosure should be set aside as fraudulent under § 548(a); Count II seeks recovery of the fraudulent transfer pursuant to § 550; Count III seeks disallowance of any claims filed by either the State of Michigan or Shiawassee County; and Count IV asserts that any claims against the State of Michigan or Shiawassee County are equally valid against the third party purchasers. Debtor's prayer for relief seeks to: (1) set aside both the initial transfer and any subsequent transfers pursuant to 547(b)(preference); (2) recover the property for the estate; (3) compel the third party to restore title of the property to Debtor; and (4) award Debtor $273,190 "in money damages for surplus and loss of equity."[2]

On January 27, 2022, this Court entered a default judgment against the Van Gilders because they did not file an answer to the Complaint. (Dkt. 15). The default judgment voided the quit claim deed issued to them by the State of Michigan and ordered them to re-convey the property to the State within 30 days.

---

[2] At oral argument on the Motion to Dismiss, Debtor's counsel conceded that he had not properly plead, nor did he intend to pursue, a preference claim under § 547. Debtor is proceeding solely under §548.

On January 27, 2022, the State of Michigan filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. (Dkt. 12). The State makes two arguments in its Motion: (1) that the *Rooker-Feldman* doctrine precludes this Court from reviewing or setting aside the state court judgment of foreclosure, and (2) Debtor has failed to state a claim for fraudulent transfer under § 548 because the State's actions were consistent with state tax foreclosure laws and procedures. The State contends that applicable tax foreclosure laws, as recently amended, ensure that foreclosed properties are sold for "reasonably equivalent value," and that Debtor had an opportunity to claim any excess proceeds from the sale of the property (i.e. the sale proceeds less the amount the State was entitled to in satisfaction of the property taxes and related expenses).

On February 10, 2022, Shiawassee County filed a Concurrence and Joinder in the State's Motion to Dismiss. (Dkt. 17).

On February 10, 2022, Debtor filed a response to the State's Motion to Dismiss. (Dkt. 19). Debtor asserts that the Complaint does not require this Court to review the state court's foreclosure judgment. Rather, the Complaint states an independent claim for fraudulent transfer under § 548 of the Bankruptcy Code. Specifically, Debtor asserts that the proceeds from the sale of the Owosso property exceeded the amount of taxes owed on the property. By retaining all the sale proceeds and remitting nothing to Debtor, Debtor asserts that he (and thus his bankruptcy estate) received less than reasonably equivalent value for the transfer.

On February 22, 2022, the Van Gilders filed a Motion to Set Aside the Default Judgment. (Dkt. 23).

On February 23, 2022, defendant State of Michigan filed a Reply to Debtor's Response. (Dkt. 24).

On February 24, 2022, Debtor filed a Response to defendant Shiawassee County's Concurrence and Joinder with defendant State of Michigan's Motion to Dismiss. (Dkt. 27).

On March 23, 2022, the Court heard oral argument on both the State's Motion to Dismiss and the Van Gilders' Motion to Set Aside the Default Judgment. At the end of hearing, the Court granted the Van Gilders' Motion to Set Aside the Default Judgment and took the State's Motion to Dismiss under advisement. The Van Gilders subsequently filed a Concurrence and Joinder in the State's Motion to Dismiss. (Dkt. No. 35).

Having reviewed the entire record and the relevant law, the Court now finds that the State's Motion to Dismiss should be granted.

## II. JURISDICTION

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or in a case under Title 11. 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H)(proceedings to determine, avoid, or recover fraudulent conveyances). It continues to be an open question, however, whether bankruptcy courts may, absent the consent of the parties, enter final orders or judgments in fraudulent transfer actions after the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011). Here, however, Plaintiff and all Defendants have expressly consented to entry of a final order or judgment by this Court. (Dkt. Nos. 38, 39, 40 and 41).

### III.  STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6)

Under F. R. Civ. P. 12(b)(6), made applicable in this adversary proceeding by F. R. Bankr. P. 7012(b), a party may assert by motion the "failure to state a claim upon which relief can be granted."  The United States Supreme Court has held that in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As explained in *Twombly*, while "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] ... Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations and citations omitted).

When deciding a Rule 12(b)(6) motion to dismiss, the Court "must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The defendant has the burden of showing that the plaintiff failed to state a plausible claim for relief. *Id*.

### IV.  ANALYSIS

Before the Court can determine whether Plaintiff has stated a claim for fraudulent transfer under § 548 of the Bankruptcy Code, it must first determine whether it has jurisdiction over Debtor's complaint. Because Debtor's Complaint expressly seeks to have the Owosso property returned to him, Defendants assert that the complaint directly challenges the validity of the

foreclosure judgment, a challenge prohibited by the *Rooker-Feldman* doctrine. Defendants contend that Debtor had no interest in the real property at the time his bankruptcy petition was filed, and that he cannot regain title to the property by relitigating the state court judgment in bankruptcy court.

### A.  <u>Jurisdiction and the *Rooker-Feldman* Doctrine</u>

Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction to review a case litigated and decided in state court. *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 & n.16 (1983). The doctrine bars a losing party in state court from filing a lawsuit in federal court after the state proceedings end, "complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011) (footnote omitted); *accord Lance v. Dennis*, 546 U.S. 459, 463 (2006) (stating that, "under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments"); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005) (explaining that the *Rooker-Feldman* doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because "28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *VanderKodde v. Mary Jane M. Elliott, P.C*., 951 F.3d 397, 402 (6th Cir. 2020) (*quoting Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012)).

Courts "determine whether *Rooker-Feldman* bars a claim by looking to the 'source of the injury the plaintiff alleges in the federal complaint.'" *Id.* (*quoting McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). If a federal plaintiff raises an *independent* claim, it is not an impediment to the exercise of federal jurisdiction even if the parties previously raised the same or a related question in state-court. *Skinner*, 562 U.S. at 532 (*citing Exxon*, 544 U.S. at 292-93). But "[i]f the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *VanderKodde*, 951 F.3d at 402 (citing McCormick, 451 F.3d at 393).

The Sixth Circuit Court of Appeals recently addressed the applicability of the *Rooker-Feldman* doctrine to a bankruptcy debtor's attempt to challenge a foreclosure sale as a fraudulent transfer. In *Lowry v. Southfield Neighborhood Revitalization Initiative*, 2021 WL 6112972 (6th Cir. Dec. 27, 2021), the debtor's home was foreclosed for past due taxes.[3] Debtor did not redeem the property and, pursuant to state law, the City of Southfield exercised its statutory right of first refusal and bought the property for the amount of the outstanding taxes due, an amount which was substantially below the fair market value of the property. The City then deeded the property to the Southfield Neighborhood Revitalization Initiative ("SNRI") for $1. The debtor subsequently filed for bankruptcy and challenged the transfer to SNRI as constructively fraudulent under § 548 of the Bankruptcy Code because it was a transfer for less than reasonably equivalent value. The bankruptcy court granted SNRI's motion for summary judgment, holding that the *Rooker-Feldman* doctrine required dismissal because the debtor was attempting to relitigate the state court

---

[3] While unpublished decisions of the Sixth Circuit do not constitute binding precedent, they may constitute persuasive authority "especially where there are no published decisions which will serve as well." *In re Hess*, 209 B.R. 79, 82 n.3 (6th Cir. BAP 1997)(citing *In re Braddy*, 195 B.R. 365, 370-71 (Bankr. E.D. Mich. 1996)).

foreclosure proceeding. On appeal the district court affirmed. The Sixth Circuit, however, reversed.

In holding that the *Rooker-Feldman* doctrine did *not* bar the bankruptcy court from hearing the fraudulent transfer claim, the Sixth Circuit expressly stated that the claim did "not involve a review of the merits of a state court judgment." *Id.* at *3. Rather,

> [the debtor's] alleged injury in this case is not the state court foreclosure judgment, but instead is the fact that he could not use § 548 to avoid the foreclosure as a fraudulent transfer. Although the § 548 issue is closely related to the state foreclosure judgment, that by itself does not mean that Rooker-Feldman applies. The Supreme Court has stated that "[i]f a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)(cleaned up). **Furthermore, exercising jurisdiction does not involve our "review and rejection" of the state court judgment**. *See Exxon* 544 U.S. at 284. **We can assume that the state court reached a proper foreclosure judgment, and then independently decided whether the foreclosure could be avoided as a fraudulent transfer under § 548.**

*Id.* at *3 (emphasis added).

In the present case, Debtor's interest in the Owosso property was foreclosed, and the redemption period expired prior to the filing of Debtor's bankruptcy petition. The state court judgment is final and the Owosso property itself did not become part of Debtor's bankruptcy estate at the time the petition was filed. Had Debtor asked this Court to review the merits of the state court foreclosure judgment to determine whether the foreclosure properly complied with state law and procedures such that the property could be returned to Plaintiff, *Rooker-Feldman* would apply to prevent this Court from such a review.[4] As clarified by the Sixth Circuit in *Lowry,* however, this Court can "assume that the state court reached a proper foreclosure judgment and then independently decide whether the foreclosure could be avoided as a fraudulent transfer under

---

[4] Having carefully reviewed Debtor's Complaint, the Court finds no allegations that the foreclosure proceedings failed to comply with applicable state law.

§ 548." *Id.* A fraudulent transfer claim is independent of the state court judgment and does not require this Court to sit as an appellate court in reviewing that judgment.

Because Plaintiff's fraudulent transfer claim under § 548 does not require this Court to review the state court's foreclosure judgment, the *Rooker-Feldman* doctrine does not apply, and the Court has jurisdiction to hear Plaintiff's Complaint.

### B. Plaintiff's Complaint fails to state a cause of action under § 548

In order to survive Defendants' Motion to Dismiss, Plaintiff's Complaint must set forth allegations sufficient to state a claim for fraudulent transfer under § 548 of the Bankruptcy Code. Because Plaintiff does not assert that the transfer was the result of collusion or misrepresentation, Plaintiff's claim falls under § 548(a)(1)(B), constructive fraudulent transfer. That section provides that the trustee may avoid: (i) a transfer of an interest of the debtor in property; (ii) made within 2 years before the filing of the petition if the debtor (iii) received less than reasonably equivalent value in exchange and (iv) was insolvent on the date of the transfer or became insolvent as a result. The Bankruptcy Code defines "transfer" broadly to include "the foreclosure of a debtor's equity of redemption." See § 101(54)(C).[5] In the case at bar, Plaintiff asserts that the value that the state received for the Owosso property, the auction proceeds, far exceeded the amount owed for back taxes and, therefore, was not reasonably equivalent to the property transferred.

The leading case addressing the definition of reasonably equivalent value under § 548 is *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), which involved the foreclosure of a *mortgage* holder's interest in real property. There, the Supreme Court held that, if all of the requirements of

---

[5] The only element of a claim under § 548 at issue in this case is reasonably equivalent value. Neither party asserts any arguments regarding the other elements of a fraudulent transfer claim.

a state's foreclosure law have been complied with, the price received at a mortgage foreclosure sale conclusively establishes reasonably equivalent value for purposes of § 548. *Id.* at 545.

The plaintiff in *BFP* defaulted on its mortgage and a private individual purchased the property in a foreclosure sale. *Id*. at 534. *BFP* argued that because the property's fair market value was over $725,000, a mortgage foreclosure sale for $433,000 was not "reasonably equivalent value" and was therefore voidable in a bankruptcy proceeding under § 548. *Id.* The Supreme Court disagreed and held: "we decline to read the phrase 'reasonably equivalent value' in § 548(a)(2) to mean, in its application to mortgage foreclosure sales, either 'fair market value' or 'fair foreclosure price' (whether calculated as a percentage of fair market value or otherwise)." *Id.* at 545. The Supreme Court continued: "We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of a State's foreclosure law have been complied with." *Id.* As a result, "[a]ny irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law.)." *Id.* at 545-46. In a footnote, the Supreme Court explicitly stated that *BFP* may apply differently for tax foreclosures: "We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id.* at 537 n. 3.

In *Lowry v. Southfield Neighborhood Revitalization Initiative*, 2021 WL 6112972 (6th Cir. Dec. 27, 2021), the Sixth Circuit Court of Appeals specifically addressed the question left open in

*BFP*; namely, if all of the requirements of a state's *tax foreclosure* law have been complied with (as opposed to a state's mortgage foreclosure law), does the price received at the tax foreclosure sale conclusively establish reasonably equivalent value for purposes of § 548? The Sixth Circuit held it did not, focusing on the fact that Michigan's tax foreclosure process was significantly different from the mortgage foreclosure process in *BFP*.

The *Lowry* Court focused on the right of first refusal provision in place at the time of Lowry's tax foreclosure. This provision permitted the state or local authorities to purchase a tax-foreclosed property before it was offered to the public for an amount equal to the delinquent taxes—an amount often only a fraction of a property's fair market value. As explained by the Sixth Circuit:

> The debtor's home in *BFP* was sold for $433,000 in a foreclosure sale that provided sufficient procedural protections under state law. In contrast, the Michigan foreclosure law here permitted the local government to purchase the property, without a public auction, for the 'minimum bid.' M.C.L. § 211.78m(1)(effective until December 31, 2020). The city bought Lowry's property for $14,496 (the amount of outstanding taxes due), an amount that had no apparent relation to the value of the property and was only about ten percent of the alleged fair-market value. The Michigan law also permitted the foreclosing government authority to retain the "surplus proceeds" from the foreclosure sale. . . [.] The Michigan tax foreclosure system is thus distinguishable from the mortgage foreclosure process addressed in *BFP*, so the rule in *BFP* does not apply to the facts of this case.

*Lowry*, 2021 WL 6112972 at *4.[6]

---

[6] In July, 2020, the Michigan Supreme Court held that the State's retention of foreclosure sale proceeds over and above the taxes (and related foreclosure expenses) constituted a taking in violation of the State Constitution. *See Rafaeli, LLC v. Oakland Cty.,* 952 N.W.2d 434, 440 (Mich. 2020). In response to *Rafaeli,* the Michigan legislature amended the General Property Tax Act and, as of January 1, 2021, municipalities wishing to exercise the right of first refusal on a foreclosed property must pay the *greater of* the minimum bid or the fair market value of the property. Mich. Comp. Laws § 211.78m. The amended Act also created a procedure to allow the foreclosed property owner to recover surplus proceeds.

The Sixth Circuit went on to note that while the foreclosure sale in *BFP* "did not necessarily result in fair market value, [] it was at least somewhat correlated to the value of the property in the not-purely-market conditions of a statutory foreclosure. This is simply not the case when a tax foreclosure sale focuses on the value of the taxes owed rather than on the value of the property." *Id*. In other words, if there is a sale of the property through a competitive market offering, *BFP* should apply, and the resulting sale price will be considered reasonably equivalent value. However, where there is no competitive bidding, such as the right of first refusal law in place at the time of *Lowry's* foreclosure, reasonably equivalent value has not been established, and *BFP* does not apply.[7]

In other words, when a tax foreclosure sale complies with state law, and the tax foreclosure sale procedures provide at least some market forces to approximate the value of the property (i.e. competitive bidding), then the price obtained at the tax sale represents reasonably equivalent value for purposes of a fraudulent transfer claim under § 548. Unlike the tax foreclosure sale in *Lowry* which was made pursuant to Michigan's old right of first refusal law, and which did not result in

---

[7] The *Lowry* court's approach is consistent with other circuit courts. See *Smith v. SIPI, LLC (In re Smith)*, 811 F.3d 228, 234 (7th Cir. 2016)(focused on a tax foreclosure process wherein "bidders bid how *little* money they are willing to accept in return for payment of the owner's delinquent taxes" thus, unlike in a mortgage foreclosure sale "the bid amounts bear no relationship to the underlying real estate"); *In re Tracht Gut, LLC*, 836 F.3d 1146, 1153 (9th Cir. 2016)("because tax sales in California contain the procedural safeguards that apply to mortgage foreclosures," a tax sale "conducted in accordance with California state law conclusively establishes that the price received at the tax sale was for reasonably equivalent value."); *In re Grandote Country Club, Co., Ltd.*, 252 F.3d 1146, 1152 (10th Cir. 2011)("the decisive factor in determining whether a transfer pursuant to a tax sale constitutes 'reasonably equivalent value' [under section 548] is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure"); *See also Robinson v. Southfield Neighborhood Revitalization Initiative, LLC (In re Robinson)*, Case No. 20-10009, (July 9, 2021, Michelson, J., copy of opinion filed in the *Robinson* Adversary Proceeding 10-04020 at Dkt. 95)(predating *Lowry* and holding that *BFP* does not apply to a tax foreclosure sale in Michigan where the foreclosure was made pursuant to the State's right of first refusal rather than by public auction).

13

a sale of the property pursuant to a public auction, the Owosso property was sold at a public auction and, therefore, was subject to market forces. The property was sold to a third party, the Van Gilders, for an amount well in excess of the taxes owed on the property.

Applying the dictates of *BFP* and *Lowry* to the amended GPTA, this Court finds that the price paid by the Van Gilders at the auction was reasonably equivalent value for purposes of § 548.

### C. **Plaintiff had a claim for excess sale proceeds but did not timely pursue that claim**

While the sale of the Owosso Property was subject to market forces and, therefore, satisfies *BFP* and *Lowry*, Plaintiff argues that sale of the Owosso Property to the Van Gilders was nevertheless a fraudulent transfer because Plaintiff did not receive any of the surplus sale proceeds. While it is true that Plaintiff did not receive any surplus sale proceeds, he had the right and the opportunity to claim surplus proceeds under Michigan's amended GPTA.

As noted, the Michigan Legislature recently amended the General Property Tax Act to provide a procedure for obtaining surplus proceeds after a tax foreclosure sale. *See* Mich. Comp. Laws § 211.78t. The procedure, which was applicable to the Owosso property, is explained on the State's website as follows:

> Beginning with the 2021 foreclosures, in accordance with MCL 211.78t, those who hold title or equity interest in property at the time of foreclosure, may file to claim leftover proceeds, if any are available, associated to those parcels which sell for more than the owing delinquency. Claiming potential proceeds begins with filing the [] form 5743 Notice of Intention to Claim Interest in Foreclosure Sales Proceeds with the Foreclosing Governmental Unit (FGU) by the July 1 immediately following the effective date of the foreclosure. The FGU will respond by January 31 following the foreclosure auctions, with a form 5744 Notice to Claimant to File Motion with the Circuit Court. Provided there actually are surplus proceeds remaining for the property, the claimant may then file a motion with the circuit

court between February 1 and May 15, following the notice from the FGU. The courts will then set a hearing date and time to determine claim payments.

In the case at bar, Debtor's interest in the Owosso property was foreclosed on March 31, 2021. In exchange, Debtor received the statutory right to claim the surplus proceeds. The statutory right to claim surplus proceeds constitutes value which, if exercised, is reasonably equivalent to the surplus proceeds themselves. Debtor's failure to avail himself of the opportunity to recover the surplus proceeds now precludes him from asserting that his property was transferred for less than reasonably equivalent value. *Cf. Nelson v. City of New York*, 352 U.S. 103 (1956)(no unconstitutional taking where statute provided owner a path to obtaining surplus proceeds, but owner did not avail himself of the opportunity).

### D. <u>Debtor has raised no issues sufficient to support an amended Complaint</u>

In his Reply Brief, Debtor requests that, if the Court dismisses his Complaint, he be permitted to file an amended Complaint. Fed. R. Civ. P. 15(a) (incorporated by Fed. R. Bankr. P. 7015) governs amendments to pleadings. "Generally, leave to amend is 'freely given when justice so requires.'" *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002) (quoting Fed. R. Civ. P. 15(a)) (citation omitted). "Although Rule 15(a)(2) provides that a court should freely give leave to amend a complaint when justice so requires, the right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008) (internal quotation marks and citation omitted). Leave to amend need not be granted when the amendment would be futile. *Miller v. Champion Enterprises, Inc*., 346 F.3d 660, 690-91 (6th Cir. 2003) (affirming the district court's denial of a motion to amend based on futility).

At oral argument on the State's Motion to Dismiss, the Court specifically asked Debtor's counsel what additional claims he would pursue in an amended complaint. Debtor did not have a

specific answer, but vaguely referred to the issues which were left unresolved and remanded in the *Lowry* case. The two issues remanded in *Lowry* were: (1) whether the debtor in that case had satisfied the insolvency requirement under § 548; and (2) whether the cutoff date for curing a mortgage default under section 1322 (i.e., the date of the foreclosure sale) should apply in the context of a tax foreclosure sale, and the interplay between § 1322 and § 548. *See Lowry*, 2021 WL 6112972 at *4, citing *In re Cain*, 423 F.3d 617 (6th Cir 2005).

Neither of those issues provides a basis for amending the complaint in the present case. With respect to the first issue, Debtor has not alleged, either in pleadings or at oral argument, that he was not insolvent at the time of the transfer. With respect to the second argument, it is irrelevant whether the cutoff date for curing a tax foreclosure default is the date of the foreclosure or the date on which the redemption period expired. In this case, both dates had passed at the time the bankruptcy petition was filed. Because Debtor has not articulated any basis for filing an amended complaint that is not futile, Debtor's request to amend the complaint is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED and Plaintiff/Debtor's Complaint is DISMISSED.

**Signed on May 2, 2022**



/s/ **Joel D. Applebaum**

**Joel D. Applebaum**
**United States Bankruptcy Judge**